UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT D. BRADY JR. and RACHEL MEGQUIER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 1:17-cv-1313 |
| SCOTTY'S HOLDINGS LLC, DUE NORTH HOLDINGS, LLC, and A POTS AND PANS PRODUCTION, LLC | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND
INCORPORATED MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

On September 25, 2017, Plaintiffs Robert D. Brady, Jr. and Rachel Megquier ("Plaintiffs" or "Settlement Class Representatives") and Defendants Scotty's Holdings LLC, Due North Holdings, LLC and A Pots and Pans Production, LLC (collectively, "Defendants" or "Scotty's", and together with Plaintiffs, the "Parties"), with the assistance of a mediator, Judge Wayne R. Andersen (Ret.) of Judicial Arbitration and Mediation Services, Inc., reached a settlement (the "Settlement"), which seeks to resolve all claims in the above-captioned action (the "Lawsuit"). Pursuant to the terms set forth in the Parties' Class Action Settlement Agreement (the "Settlement Agreement")(attached hereto as Exhibit 1), Plaintiffs now respectfully ask the Court to enter an order, in substantial form to Exhibit D of the Settlement Agreement, preliminarily approving the Settlement, provisionally certifying the Settlement Class

(defined below) for settlement purposes only, directing that notice of the Settlement be disseminated to members of the Settlement Class in the form and manner proposed therein, scheduling a Final Approval Hearing to consider whether the Settlement should be finally approved, and staying all further proceedings in the Lawsuit.

Preliminary approval of the proposed Settlement is warranted because, as further described herein, the proposed Settlement is well "within the range of possible approval" so as to provide a "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (citing Manual for Complex Litigation § 1.46 (1977)), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the litigation and provide significant relief to the Settlement Class Members. The Settlement provides tiered monetary relief to compensate Settlement Class Members for inconveniences and losses as a result of the Data Disclosure, as well as injunctive relief, some of which has been implemented already by Defendant. The Settlement compares favorably with settlements in similar litigation and was reached only after intensive arm's length negotiations before a skilled mediator. Accordingly, Plaintiffs respectfully submit that the Court should approve the terms and conditions of the Settlement and provide for notice to the Settlement Class.

## II.    OVERVIEW OF PLAINTIFFS' CLAIMS, THE LITIGATION, AND THE MEDIATION

This Lawsuit was filed as a class action against Scotty's for negligence, invasion of privacy, breach of implied contract, and breach of fiduciary duty. Specifically, the operative complaint (the "Complaint") in the Lawsuit alleges that Scotty's gave W-2 form information and

other personally identifiable information (collectively, the "PII") of Plaintiffs and the other class members to cyber criminals in connection with a "phishing" scheme.

Plaintiffs filed the Complaint on April 26, 2017. (ECF No. 1.) On June 19, 2017, Defendants filed an Answer. (ECF No. 18.) While conferencing on the case management plan, the Parties discussed the possibility of early settlement discussions. To that end, the Plaintiffs sent a settlement proposal to Defendants on July 7, 2017. The Parties continued working together to prepare a case management plan, including the negotiation of an ESI protocol, which was finalized and filed on July 12, 2017. (ECF 27.) On July 19, 2017, the Parties held a Telephonic Initial Pretrial Conference before Magistrate Judge Mark J. Dinsmore. (ECF No. 29.) During this Conference the Parties and their respective counsel advised the Judge of their agreement to mediate the Lawsuit. *Id.*

On September 25, 2017, the Parties and their respective counsel participated in a full-day mediation in Chicago, Illinois with mediator Judge Wayne R. Andersen (Ret.) of Judicial Arbitration and Mediation Services, Inc., during which the Parties reached an agreement in principle. During the mediation, Plaintiffs' counsel shared information regarding specific damages incurred by class members and Defendants' counsel provided additional details regarding the TransUnion identity theft service previously offered by Defendants, including allowing Plaintiffs' counsel to speak with and pose questions to representatives of Defendants in order to fully understand the processes and benefits of the TransUnion service.

Based Class Counsel's independent investigation of the relevant facts and applicable law, experience with other W-2 data disclosure cases, and the information provided by Defendants, Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the Parties worked together to negotiate, finalize,

and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

## III.    THE PROPOSED SETTLEMENT

### A.    Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class as defined in the Settlement Agreement:

> All current and former members of Defendants' workforce whose personal information was disclosed in the Data Disclosure.

### B.    Proposed Settlement Terms

The Settlement provides both monetary and injunctive relief. The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the litigation and provide significant relief to the Settlement Class Members. Defendants shall make available the following benefits and relief to Settlement Class Members who submit valid Claim Forms with the required documentation as noted:

1.    Extension of Identity Theft Protection. The TransUnion service initially offered by Defendants in response to the Data Disclosure will be extended through February 1, 2019 for all members of the Settlement Class who previously enrolled.

2.    Open Enrollment for Identity Theft Protection. All members of the Settlement Class will be offered an opportunity to enroll in the TransUnion service initially offered by Defendants in response to the Data Disclosure for a period through February 1, 2019.

3.    Reimbursement of Self-Paid Identity Theft Protection. Any Settlement Class Member who purchased identity theft protection on their own from January 31, 2017 through March 1, 2017 may seek reimbursement for the actual cost incurred for up to 12 months of their

chosen service, not to exceed $150. The Settlement Class Member must submit documentation to prove monthly costs incurred by them and for which they may be obligated.

    4.    <u>Reimbursement of Expenses</u>. Settlement Class Members may choose all applicable categories:

    <u>Claim A</u>: Settlement Class Members who had a false or fraudulent tax return filed after January 30, 2017 will be eligible for a payment of $350. Claimants must provide proof of the false tax return being filed and attest that they have no knowledge of a false or fraudulent tax return being filed in their name in the three years prior to 2017.

    <u>Claim B</u>: Settlement Class Members who had who had an IRS tax transcript requested without their authorization using their personal information after January 30, 2017 and submitted an identity theft affidavit to the IRS shall be entitled to a payment of $150. Claimants must provide proof of the false tax transcript request and submission of the identity theft affidavit, and attest that they have no knowledge of an IRS tax transcript being fraudulently requested using their personal information in the three years prior to 2017.

    <u>Claim C</u>: Settlement Class Members who experienced incidents of identity theft, other than the filing of a false or fraudulent tax return or unauthorized request for an IRS tax transcript using their personal information, after January 30, 2017 shall be entitled to a payment of $250. Excluded from eligibility are incidents of fraudulent charges on existing credit cards. Claimants must provide documentation of the fraudulent activity or a personal attestation of the details of such activity. Additionally, Settlement Class Members making a claim under Claim C must attest that they have no knowledge of

incidents of identity theft, other than fraudulent credit card activity, in the three years prior to 2017.

Claim D:    Settlement Class Members who claim they suffered out-of-pocket expenses (other than the purchase of identity theft service) after January 30, 2017 as a result of the Data Disclosure shall be entitled to reimbursement of such in an amount not to exceed $500.  Claimants must submit reasonable documentation supporting the claim for expenses.  Settlement Class Members may also submit a self-verifying statement for time spent dealing with the effects of the Data Disclosure and be reimbursed for up to three hours at $15/hour under Claim D.

There shall be no cap for the sums to be paid to Settlement Class Members under Claim A and Claim B.

The sum of the total reimbursement paid under Claim C to all Settlement Class Members shall not exceed $50,000.  Should the sum of the total reimbursement claimed under Claim C exceed $50,000, the payments made to Settlement Class Members shall be reduced on a *pro rata* basis.

The sum of the total reimbursement paid under Claim D to all Settlement Class Members shall not exceed $50,000. Should the sum of the total reimbursement claimed under Claim D exceed $50,000, the payments made to Settlement Class Members shall be reduced on a *pro rata* basis.

5.    Preventive Actions.    In addition to providing the monetary relief as describe above, Defendants will undertake the following actions:

a.    Cyber Security Awareness Training:    Defendants will provide security awareness training for all members of their workforces for calendar year 2018.

b.     <u>Cyber Security Training for Human Resources Personnel</u>:    Members of Defendants' human resources departments will complete within ninety (90) Days of the Effective Date a security awareness training program that includes a phishing security awareness component. Additionally, all new HR employees for the next two years will be required to complete this training within 90 days of hire.

c.     <u>Cyber Security Representatives</u>:    Defendants will designate an employee or committee of employees to coordinate and be responsible for Defendants' cyber security.

d.     <u>New Cyber Security Protocols</u>:    Within ninety (90) Days after the Effective Date, Defendants will develop and implement new protocols for (1) the security of any files containing employees' personally-identifying information and (2) the electronic transfer of such files.

**C.     <u>Other Key Provisions</u>**

Defendants will pay for the costs of claims administration and class notice. These costs will be paid separately by Defendants and will not reduce the relief provided for the Settlement Class.

After reaching initial agreement on benefits to Settlement Class Members, the parties separately negotiated Class Counsel's claims for attorney fees, costs and reimbursement of litigation expenses, as well as service awards for the Class Representative.  Defendants have agreed to pay court approved service awards not to exceed $5000.00 per Settlement Class Representative in recognition of the commitment and effort they have contributed to the litigation for the benefit of the Settlement Class.  In addition, Defendants have agreed to pay

court approved attorneys' fees, costs and expenses in an amount not to exceed $275,000.00. These sums are to be paid separately from the relief obtained for the Settlement Class.

### D.    **Proposed Notice Plan**

The Settlement provides a comprehensive notice program to be administered by the Settlement Administrator, subject to Court approval.  The Notice Program has two components: (1) Mail Notice and (2) Notice on the Settlement Website. The proposed Notices are reasonably calculated to inform potential Class members of the Settlement and are the best practicable methods under the circumstances.  Within 45 days after the Court preliminarily approves the Settlement, (the "Notice Deadline"), Settlement Class Members will be delivered notice of the Settlement and their rights and options directly by mail.  The Settlement Administrator will also create a settlement website where Settlement Class Members can obtain information on the Settlement and file a Claim Form.

### 1.  **Direct Notice**

By the Notice Deadline, the Settlement Administrator will mail the Class Notice (Exhibit B to the Settlement Agreement) and a Claim Form (Exhibit C to the Settlement Agreement) to all Settlement Class Members at the address on file in Defendants' business records.   For any mailed notices that are returned undeliverable and where a forwarding address is available, the Settlement Administrator will re-mail the notice to the forwarding address.  For any mailed notices that are returned undeliverable without a forwarding address, the Settlement Administrator will use reasonable efforts to identify updated mailing addresses, such as running the mailing address through the National Change of Address Database, and re-mail the notice to the extent updated addresses are identified.

The Notice shall:

- contain a short, plain statement of the background of the Litigation and the proposed Settlement;

- describe the proposed Settlement relief;

- inform the Settlement Class that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief and will release their claims;

- describe the procedures for participating in the Settlement and advise the Settlement Class of their rights, including their right to file a Claim Form to receive benefits under the Settlement, to opt out of or object to the Settlement;

- explain the impact of the proposed Settlement on any existing litigation, arbitration or other proceeding;

- state that any award to Settlement Class Members under the Settlement is contingent on the Court's final approval of the proposed Settlement;

- explain the procedures for opting out of the Settlement;

- specify that opt outs shall be allowed on an individual basis only and that so-called "mass" or "class" opt outs shall not be allowed; and

- provide that any objection to the Settlement and any papers submitted in support of said objection will be considered only if the Settlement Class Member making an objection has filed timely notice of his or her intention to do so, with the grounds for the objection, and has filed copies of such papers he or she proposes to submit at the Fairness Hearing with the Clerk of the Court on or before the Opt Out and Objection Date, as approved by the Court and specified in the Class

9

Notice.  A Class Member who fails to follow the procedures and deadlines set forth in the Class Notice for submitting his or her comments to the proposed Settlement will waive his or her right to be heard by the Court and will waive his or her right to appeal.

**2.  Settlement Website**

No later than fourteen (14) Days after the Preliminary Approval Date, the Settlement Administrator will create a website dedicated to this Settlement.  The website will make available to Settlement Class Members information and details on the Settlement, the Complaint, both the Short-Form Notice and Long-Form Notice (Exhibit A to the Settlement Agreement), and Claim Form. Further, the Settlement Administrator will maintain a toll-free number where Settlement Class Members can obtain additional information. The Settlement Website shall be maintained from the Notice Date until thirty (30) Days after the Claim Deadline has passed.

**3.  Exclusion and Objection Procedures**

The Notice shall set forth the procedure for Settlement Class Members to exclude themselves from the Settlement Class.  The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses.

**Objections**.  Any Settlement Class Member who intends to object must do so on or before the Opt Out and Objection Date.  In order to object, the Settlement Class Member must include in the objection submitted to the Court:

- A caption or title that identifies it as "Objection to Class Settlement in Brady v. Scotty's Holdings, et al., Case No. 1:17-cv-01313-TWP-MJD (S.D. Ind.);"

- The full name, address, email address, telephone number of the Person objecting and, if represented by counsel, of his or her counsel;

- A written statement detailing each objection the Settlement Class Member is making, the facts supporting each objection, the legal basis on which each objection is based, and the relief the objecting Settlement Class Member is requesting; and

- Copies of any documents upon which the objection is based or that the objecting Settlement Class Member may seek to use at the Fairness Hearing.

If an objecting Settlement Class Member intends to appear at the Fairness Hearing, either with or without counsel, he or she must also file a notice of appearance with the Court (as well as serve on Class Counsel and Defense Counsel) no later than ninety (90) Days after the Preliminary Approval Date.  Further, if the objecting Settlement Class Member intends to appear at the Fairness Hearing through counsel, he or she must also identify the attorney(s) representing the objector who will appear at the Fairness Hearing.  If the objecting Settlement Class Member intends to request the Court allow the Class Member to call witnesses at the Fairness Hearing, the objecting Class Member must provide a list of any such witnesses together with a brief summary of each witness' expected testimony no later than ninety (90) Days after the Preliminary Approval Order. Any Settlement Class Member who fails to timely file and serve a written objection and notice of his or her intent to appear at the Fairness Hearing pursuant to this Agreement, as detailed in the Notice, shall not be permitted to object to the approval of the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.  Any objecting Settlement Class Member who appeals a grant of Final Approval will be required to post an appeal bond.

**Exclusions.**  A member of the Settlement Class who wishes to opt out of the Settlement Class must do so on or before the Opt Out and Objection Date.  In order to opt out, the member of the Settlement Class must complete and send to the Settlement Administrator a request for exclusion that is postmarked no later than the Opt Out and Objection Date.  The request for exclusion must be personally signed by the member of the Settlement Class requesting exclusion and contain a statement that indicates a desire to be excluded from the Class.  A member of the Settlement Class may opt out on an individual basis only; so-called "mass" or "class" opt outs shall not be allowed.

Except for those who timely and properly file a request for exclusion, all other members of the Settlement Class will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Effective Date, will be bound by its terms, regardless of whether they file a Claim Form or receive relief.

Any Person who properly opts out of the Settlement Class shall not:  (a) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

The Settlement Administrator will provide Class Counsel with the Opt Out List within ten (10) Days after the Opt Out and Objection Date.

**E.**    **Notice and Settlement Administrator**

The Settlement Administrator will have those responsibilities set forth in the Settlement Agreement, including acting as the notice agent and processing and resolution of claim forms, opt outs, objections and approval of claims.   The costs of claims administration and class notice is being paid by Defendants separate and apart from the settlement relief and, accordingly, is an

additional benefit to the class.

The parties recommend that RG/2 Claims Administration LLC ("RG/2"), an experienced claims administrator, be approved to serve as the Notice and Settlement Administrator. The parties received project bids from multiple companies and concluded that RG/2 is well-suited to provide the notice and claims administration services needed for this Settlement. The parties, therefore, respectfully request that the Court appoint RG/2 to serve as the Settlement Administrator with the authority to disseminate notice in accordance with the Settlement Agreement and to perform all other duties described in the Settlement Agreement.

## IV. APPLICABLE LEGAL STANDARDS FOR APPROVAL OF SETTLEMENT

Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial approval of a proposed class action settlement is well established:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. Manual for Complex Litigation § 1.46, at 53-55 (West 1977). If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard. The goal of the fairness hearing is to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is "fair, reasonable, and adequate." Manual for Complex Litigation at 57.

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Dexter v. Ministry Health Care*, Case No. 14-cv-087-wmc, 2015 U.S. Dist. LEXIS 37896, at *10 (W.D. Wis. Mar. 25, 2015). Importantly, "[b]ecause class members will subsequently receive

notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *In re M.L. Stern Overtime Litig.*, Case No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9-10 (S.D. Cal. April 13, 2009) (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)); *Armstrong,* 616 F.2d at 312.

At this juncture, Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement and provide for notice to the Class. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *Langendorf v. Conseco Senior Health Ins. Co*., Civil Action No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289, at *24 (N.D. Ill. Nov. 18, 2009) (stating there is an initial presumption of good faith in the negotiation of class action settlements where the settlement is the product of serious, informed, non-collusive negotiations); *Great Neck Capital Appreciation Inc. P'ship, L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (W.D. Wis. 2002) (stating there is an initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arms-length negotiations.). Here, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects.

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. The approval process typically takes place in two stages. For the first stage, a court preliminarily approves the settlement pending a fairness hearing, certifies the class for settlement purposes and authorizes notice to be given to the settlement class. *Manual for Complex Litigation (Fourth)* §21.632 at 320 (2004). Once the class has received notice and has an opportunity to comment on the settlement, the court then holds a final settlement hearing. *Id*. §21.633 at 321-22.

The purpose of preliminary approval is to afford the Court an opportunity to review the proposed settlement before the parties engage in the costly and time-consuming process of disseminating class notice. *See Newberg on Class Actions* §13:10 (5th ed.).

### A.    Certification of the Settlement Class Is Appropriate

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Federal Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

> (3) the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As set forth below, all the requirements of Rule 23 are met in this case, justifying preliminary certification of the proposed Settlement Class.

        1.     <u>The Class is Sufficiently Numerous</u>

No arbitrary rules regarding the necessary size of classes have been established. *Seidman v. Am. Mobile Sys.,* 157 F.R.D. 354, 359 (E.D. Pa. 1994) ("There is no magic minimum number necessary to satisfy the Rule 23(a)(1) numerosity requirement."). Still, numerosity is generally presumed when the potential number of class members reaches forty (40). *Shepherd v. ASI, Ltd.,* 295 F.R.D. 289, 296 (S.D. Ind. 2013) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)."); *McCabe v. Crawford & Co*., 210 F.R.D. 631, 644 (N.D. Ill. 2002) (same).

Here, based on Defendant's internal records, the Settlement Class is 4,000. Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

        2.     <u>Common Questions of Law or Fact Exist</u>

To certify the Settlement Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a), there "need be only a single issue common to all members of the class." *Edmonson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980); *Hispanics United v. Vill. of Addison*, 160 F.R.D. 681, 688 (N.D. Ill. 1995). As such, "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Moreover, "[t]he presence of some factual differences in the claims of the class . . . does not preclude a finding of commonality." *McAdams v. Mass Mut. Life Ins. Co.*, Civil Action No. 99-30284-FHF, 2002 U.S. Dist. LEXIS 9944, at *10 (D. Mass. May 15, 2002). In this case, questions of law or fact common to the Settlement Class include, among others, the following: (1) whether Defendant gave the PII of

Plaintiffs and the Class Members to a third party without authorization; (2) whether Defendants had a duty to protect the PII of Plaintiffs and Class Members from disclosure; and (3) whether Plaintiffs and Class Members were injured by Defendants' release of their PII.

### 3.    Plaintiffs' Claims are Typical of Those of the Settlement Class

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement focuses on "whether the named representatives' claims have the same essential characteristics as the claim of the class at large." *Shepherd*, 295 F.R.D. at 297. "In other words, the named plaintiff must be fully representative of the class, possessing the same interest and suffering the same injury—in broad terms—as the other class members." *Id*. at 298; *see also McAnaney v. Astoria Fin. Corp.,* No. 04-CV-1101, 2006 WL 2689621, at*4 (E.D.N.Y. Sept. 19, 2006) (quoting *DeBoer v. Mellon Mortgage. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.").

In the case at bar, Plaintiffs have claims not only similar, but virtually identical, to members of the Settlement Class and one another. Indeed, Plaintiffs' claims are typical of the Settlement Class Members because they arise from Defendants' release of PII to cyber criminals and are based on the same legal theories.  As such, Rule 23(a)(3) is satisfied.

### 4.    Plaintiffs Will Adequately Protect the Interests of the Settlement Class

The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997). The factors relevant to a determination of adequate representation are "whether [movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is a conflict between [the movant's] claims and

those asserted on behalf of the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (7th Cir. 1975) (stating that a plaintiff can satisfy Rule 23(a)(4) by showing that he does not possess "interests antagonistic to the class."); *Shepherd*, 295 F.R.D. at 298 (same).

Here, Plaintiffs and the Settlement Class desire the same outcome of this litigation, namely to retrieve the best possible relief from the Defendant. Indeed, Plaintiffs' claims coincide identically with the claims of the Settlement Class. Because of this, Plaintiffs have vigorously prosecuted this case for the benefit of all members of the Settlement Class. Moreover, there is no conflict or any antagonism between Plaintiffs and the Settlement Class. Accordingly, Plaintiffs have the ability and incentive to represent the claims of the Settlement Class vigorously.

Additionally, under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Plaintiffs have selected and retained as counsel for the Settlement Class: John A. Yanchunis of Morgan & Morgan Complex Litigation Group and Paul C. Whalen of Law Office of Paul C. Whalen, P.C. ("Co-Lead Counsel") and Marisa K. Glassman of Morgan & Morgan Complex Litigation Group; Lynn A. Toops of Cohen & Malad, LLP; Jean S. Martin of the Law Office of Jean Sutton Martin, PLLC; Brian P. Murray of Glancy Prongay & Murray LLP; and, Jasper D. Ward IV of Jones Ward PLC (collectively, "Class Counsel"). These firms

possess extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation. *See* Exhibit A to Declaration of John Yanchunis, attached hereto as Exhibit 2. Class Counsel and their firms are greatly experienced in litigating and resolving data breach class actions and have developed a strong understanding of the strengths and weaknesses present in such cases and what type of settlement might be fair, reasonable, and adequate under the circumstances.

Class Counsel thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiffs in this case. Although formal discovery did not occur, the parties exchanged a substantial amount of information through an informal process. Defendants were forthcoming with information related to the Data Disclosure. The information shared through this informal process provided a sound basis that allowed the parties to weigh the terms of the Settlement against the risks of continued litigation. In addition, the settlement terms are favorable to the Class and meet the demands in the Complaint.

> 5.    The Requirements of Rule 23(b) Are Satisfied

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem Prods. v. Windsor,* 521 U.S. 591, 591-94 (1997). These requirements are satisfied in this case.

> a.    *Common Questions of Law or Fact Predominate*

In analyzing the predominance factor, the Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622. This is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single

adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1778 (3d ed. 2011).

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether the Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and Class Members and whether Defendants' release of such PII constitutes a breach of privacy. Accordingly, this prong of Rule 23(b) is satisfied.

b.    *A Class Action is the Superior Method of Adjudicating This Case*

The second prong of Rule 23(b) is satisfied by the proposed Settlement. As explained in *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

Because Rule 23(a) and 23(b)(3) are satisfied, the Court should provisionally certify the proposed Settlement Class for purposes of settlement and the issuance of notice.

**B.    <u>The Proposed Settlement Satisfies the Standards for Preliminary Approval</u>**

To evaluate fairness at the preliminary approval stage, courts may consider the following factors: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of

discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Here, the proposed Settlement easily warrants preliminary approval. The Settlement is the result of arm's-length negotiations among experienced counsel with a firm understanding of the strengths and weaknesses in this Lawsuit, and the recovery for Settlement Class Members is substantial, particularly when weighed against the risks, uncertainties, and delays of further litigation.

First, the Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Lawsuit, assisted by a neutral mediator. These circumstances weigh in favor of approval. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996); *Great Neck Capital Appreciation Inc. P'ship*, 212 F.R.D. at 410 (W.D. Wis. 2002) (a proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable); *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate).

Second, Class Counsel's work crystallized the relevant facts in the case, enabled Class Counsel to effectively value the Parties' respective positions in the Lawsuit, and verified the fairness, adequacy, and reasonableness of the Settlement. Further, the Settlement avoids the time, expense, and delay inherent in continued litigation. Accordingly, these factors also favor preliminary approval. *Isby*, 75 F.3d at 1200.

Finally, and most importantly, the multi-tiered benefits, including two funds without caps, provided by the Settlement, cause this Settlement to fall well within the range of a

reasonable settlement. *Wyms v. Staffing Solutions Southeast, Inc*., 2016 U.S. Dist. LEXIS 149752, at *10 (S.D. Ill. Oct. 28, 2016) (stating that at the preliminary approval stage, "the Court need only determine whether the settlement is 'within the range of possible approval.'" (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)). The substantial and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation. Class Counsel do not expect to encounter a high degree of opposition to the settlement considering the variety of benefits provided and the tiered level of compensation tailored to the damages suffered by the Settlement Class.

In contrast, if the Lawsuit were to continue, Plaintiff and the Settlement Class would face a number of difficult challenges, namely obtaining class certification and maintaining certification through trial and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this Lawsuit. Consequently, the Court should grant preliminary approval of the Settlement.

## VI.    THE PROPOSED NOTICE IS THE BEST NOTICE PRACTICABLE

After preliminary approval, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice should inform members of the Settlement Class of the terms of the proposed Settlement and of the opportunity to present their own views on the Settlement. *See Manual for Complex Litigation* § 21.633.

The notice program in the Settlement Agreement is the best notice practicable under the circumstances. The Settlement contemplates providing direct notice and a Claim Form to the Settlement Class by first-class mail. *See*, Exhibits B and C to the Settlement Agreement. Further, the contents of the Notice advise Settlement Class Members of the essential terms of the Settlement, the rights of Settlement Class Members to share in the recovery, the rights of Settlement Class Members to request exclusion from the Class or to object to the Settlement, and

will provide specifics on the date, time and place of the final approval hearing. Thus, the notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notice also contains information regarding Settlement Class Counsel's fee application, Class Representatives' service awards, and the proposed plan for allocating the Settlement proceeds among Settlement Class Members. Thus, the form and manner of notice proposed under the Settlement fulfill all the requirements of Rule 23 and due process. Accordingly, the Court should approve the proposed form and manner of notice.

## VII.    PROPOSED SCHEDULE

In connection with the preliminary approval of the Settlement, Plaintiffs ask the Court to set a date for the Final Approval Hearing, dates for filing papers relating to final approval and attorneys' fees, dates for sending notice to the Settlement Class, and deadlines for any requests for exclusion or objections. Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Creation of Settlement Website | 14 days of entry of the Preliminary Approval Order |
| Notice Date | 45 days of entry of the Preliminary Approval Order |
| Exclusion/ Objection Deadline | 90 days after entry of the Preliminary Approval Order |
| Claims Deadline | 90 days after entry of the Preliminary Approval Order |
| Deadline for Settlement Class Counsel's Application for Attorneys' Fees and Service Awards for Settlement Class Representatives | 30 days before the Final Approval Hearing |
| Deadline for Motion in Support of Final Approval of Settlement | 30 days before the Final Approval Hearing |

| Final Approval Hearing | No earlier than 150 days after entry of the Preliminary Approval Order |
|---|---|

## VIII.  CONCLUSION

For the foregoing reasons, the Court should enter an order (i) provisionally certifying the proposed Settlement Class; (ii) appointing Plaintiffs as Settlement Class Representatives of the Settlement Class; (iii) appointing John A. Yanchunis of Morgan & Morgan Complex Litigation Group and Paul C. Whalen of Law Office of Paul C. Whalen, P.C. as "Co-Lead Counsel" and Marisa K. Glassman of Morgan & Morgan Complex Litigation Group; Lynn A. Toops of Cohen & Malad, LLP; Jean S. Martin of the Law Office of Jean Sutton Martin, PLLC; Brian P. Murray of Glancy Prongay & Murray LLP;; and, Jasper D. Ward IV of Jones Ward PLC. as "Class Counsel" for the Settlement Class; (iv) preliminarily approving the Settlement of this action; (v) approving the timing, form, content, and manner of the giving of notice of the Settlement to the members of the Settlement Class; and (vi) setting a hearing date for the Final Approval Hearing.


Dated: May 6, 2018                                     Respectfully submitted,

                                                      **MORGAN & MORGAN COMPLEX**
                                                      **LITIGATION GROUP**
                                                      John A. Yanchunis
                                                      jyanchunis@Forthepeople.com
                                                      Marisa Glassman
                                                      mglassman@ForThePeople.com
                                                      201 N. Franklin Street, 7th Floor
                                                      Tampa, Florida 33602
                                                      Telephone: (813) 223-5505
                                                      Facsimile: (813) 223-5402

                                                      **LAW OFFICE OF PAUL C. WHALEN, P.C.**
                                                      Paul C. Whalen
                                                      paul@paulwhalen.com
                                                      768 Plandome Road
                                                      Manhasset, New York 11030

Telephone: (516) 426-6870
Facsimile: (212) 658-9685

**LAW OFFICE OF JEAN SUTTON MARTIN PLLC**
Jean Sutton Martin
jean@jsmlawoffice.com
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
Facsimile: (888) 316-3489

**COHEN & MALAD, LLP**
Irwin B. Levin
ilevin@cohenandmalad.com
Richard E. Shevitz
rshevitz@cohenandmalad.com
Lynn A. Toops
ltoops@cohenandmalad.com
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2495

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
bmurray@glancylaw.com
230 Park Ave, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988

**JONES WARD PLC**
Jasper D. Ward IV
jasper@jonesward.com
The Pointe
1205 E. Washington Street, Suite 111
Louisville, Kentucky 40206
Telephone: (502) 882-6000
Facsimile: (502) 587-2007

*Counsel for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on May 6, 2018, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

<u>s/ Jean Sutton Martin</u>
Jean Sutton Martin