UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT D. BRADY JR. and<br>RACHEL MEGQUIER, on behalf of<br>themselves and all others similarly<br>situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 1:17-cv-1313 |
| SCOTTY'S HOLDINGS LLC, DUE<br>NORTH HOLDINGS, LLC, and<br>A POTS AND PANS PRODUCTION, LLC | ) ) ) ) ) | |
| Defendants.<br>_____ | ) ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES
AND EXPENSES, AND SERVICE AWARDS**

Plaintiffs, by Co-Lead Class Counsel, respectfully move this Court, on behalf of

themselves and the Settlement Class Members, for an order granting final approval to the parties'

settlement.

## I. INTRODUCTION

On May 14, 2018, the Court granted Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Action Settlement, which preliminarily approved the Settlement of this matter

that asserted claims after an employee of Defendants emailed W-2s of present and former

employee to an unauthorized third party in response to a phishing email. [Dkt. 52.] Pursuant to the

Preliminary Approval Order, Plaintiffs now move for final approval of the class action settlement.

As discussed below, the terms of the Settlement create substantial benefits for Settlement Class

members, including an extended offering of TransUnion credit monitoring (which otherwise

comes at a high retail cost of nearly $20 per month or approximately $240 per year per Class member), the improvement of Defendants' data security and training, and monetary relief; the Settlement is fair, reasonable and adequate; and meets the requisite criteria for final approval under Rule 23(e) of the Federal Rules of Civil Procedures. The positive response by members of the Settlement Class confirms that final approval is warranted. No objections have been filed and no Settlement Class Members requested to be excluded. *See*, Declaration of Melissa Baldwin, ¶¶ 11-12, attached hereto as Exhibit A ("Baldwin Dec.").

By settling now, class members can obtain timely and practical remedies that otherwise would not be available for years, if at all. Defendants' current and former employees need their private information to remain confidential and secure. Extended credit monitoring services and immediate changes to Defendants' data-security practices and training can help achieve that goal. Credit monitoring works to prevent and detect misuse of information compromised in the Data Disclosure, while changes in data-security practices work to reduce the risk of future unauthorized disclosures. Delays in either of these items would have hurt the class members.

For these reasons, Plaintiffs, on behalf of themselves and the Settlement Class, respectfully request that the Court issue an order granting final approval to the Settlement, certifying the Settlement Class for settlement purposes only, and enter a final judgment dismissing this case with prejudice. Co-Lead Class Counsel also respectfully requests that the Court award $275,000 in attorneys' fees as agreed by the parties, which is less than the lodestar and expenses incurred to date, and that the Court award $5,000 in service awards to the two Class Representatives.

## II.    TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The Settlement provides relief for the following Settlement Class as defined in the Settlement Agreement:

> All current and former members of Defendants' workforce whose personal information was disclosed in the Data Disclosure.

### B.    Monetary Benefits to Settlement Class Members

Settlement Class Members are eligible for the following:

1.    <u>Extension of Identity Theft Protection</u>. The TransUnion service initially offered by Defendants in response to the Data Disclosure will be extended for an additional 12 monthsfor all members of the Settlement Class who previously enrolled. The retail cost of this service is $19.95 per month[1], meaning the extension of 12 months provides a benefit worth $239.40 per Class Member.

2.    <u>Open Enrollment for Identity Theft Protection</u>. All members of the Settlement Class that did not previously enroll were offered an additional opportunity to enroll in the TransUnion service initially offered by Defendants in response to the Data Disclosure for a period of 12 months. Again, based upon the retail cost of the TransUnion service, this benefit is worth $239.40 per Class Member.

With no cap on the amount that could be claimed by Settlement Class Members for the TransUnion credit monitoring offering, this benefit alone has a potential value of $843,645.60.

---

[1] https://www.transunion.com/credit-monitoring# (last visited September 3, 2018).

3.        <u>Reimbursement of Self-Paid Identity Theft Protection</u>. Any Settlement Class Member who purchased identity theft protection on their own from January 31, 2017 through March 1, 2017 could seek reimbursement for the actual cost incurred for up to 12 months of their chosen service, not to exceed $150.

4.        <u>Reimbursement of Damages, Expenses, and Inconveniences</u>. Settlement Class Members could choose all applicable categories:

<u>Claim A</u>: Settlement Class Members who had a false or fraudulent tax return filed after January 30, 2017 will be eligible for a payment of $350.

<u>Claim B</u>: Settlement Class Members who had who had an IRS tax transcript requested without their authorization using their personal information after January 30, 2017 and submitted an identity theft affidavit to the IRS shall be entitled to a payment of $150.

<u>Claim C</u>: Settlement Class Members who experienced incidents of identity theft, other than the filing of a false or fraudulent tax return or unauthorized request for an IRS tax transcript using their personal information, after January 30, 2017 shall be entitled to a payment of $250. Excluded from eligibility are incidents of fraudulent charges on existing credit cards.

<u>Claim D</u>: Settlement Class Members who claim they suffered out-of-pocket expenses (other than the purchase of identity theft service) after January 30, 2017 as a result of the Data Disclosure shall be entitled to reimbursement of such in an amount not to exceed $500.

There is no cap for the sums to be paid to Settlement Class Members under Claim A and Claim B. Settlement Class Members were eligible to make claims under both categories. With per

Class Member values of $250 and $150 respectively, the monetary funds available for these claims (Claims A and B) under the Settlement total $1,301,600.

If the total reimbursement paid under Claims C and D exceeds $50,000, the payments made to Settlement Class Members shall be reduced on a *pro rata* basis.

Adding the amounts for the extended credit monitoring benefit, the funds available for Claims A and B, with the capped funds of $50,000 for Claim C and $50,000 for Claim D, yields a total potential value of $2,245,245.60.

### C.    Data Security Improvements and Training

One of the primary benefits of the proposed Settlement is that it requires Defendants to improve its data security and training. In addition to providing the monetary relief as describe above, Defendants will undertake the following actions:

a.    <u>Cyber Security Awareness Training</u>: Defendants will provide security awareness training for all members of their workforces for calendar year 2018.

b.    <u>Cyber Security Training for Human Resources Personnel</u>: Members of Defendants' human resources departments will complete a security awareness training program that includes a phishing security awareness component. Additionally, all new HR employees for the next two years will be required to complete this training within 90 days of hire.

c.    <u>Cyber Security Representatives</u>: Defendants will designate an employee or committee of employees to coordinate and be responsible for Defendants' cyber security.

      d.    <u>New Cyber Security Protocols</u>: Defendants will develop and implement new protocols for (1) the security of any files containing employees' personally-identifying information and (2) the electronic transfer of such files.

The data security policies and training provided by the Settlement are particularly meaningful in a case such as this where Defendants did not keep secure the personal information of its employees, not to mention that the personal information of employees remains in the possession of Defendants.

**D.    Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendants and related entities from all known and unknown claims related to the alleged claims or events in the Complaint or the Data Disclosure as more fully described in the Settlement Agreement. (ECF No. 50.1, SA § X.)

**E.    Other Key Provisions**

Defendants will pay for the costs of claims administration and class notice. These costs will be paid separately by Defendants and will not reduce the relief provided for the Settlement Class. Declaration of John Yanchunis, attached hereto as Exhibit B, ¶ 6 ("Yanchunis Decl.").

Defendants have also agreed to pay service awards for the Class Representatives and attorney fees, costs and reimbursement of litigation expenses separately from the relief obtained for the Settlement Class, as set forth below. Yanchunis Decl. ¶ 6.

**III.    DETAILS OF NOTICE PROGRAM AND CLAIMS PROCESS**

On May 25, 2018, RG/2 Claims, the Settlement Administrator, caused the Settlement website to go live. Baldwin Dec. ¶ 5.

On June 28, 2018, RG/2 Claims mailed the short-form notice of class action settlement ("Mail Notice") to 3,524 Class Members via First Class U.S. Mail. Baldwin Dec. ¶ 8. Appropriate steps were also taken to re-mail notices that were returned undeliverable and to locate current address information through the National Change of Address Database. Baldwin Dec. ¶ 10.

The Notice Program was designed to reach as many of the Settlement Class Members as possible, and fully comports with due process under the circumstances of this case. RG/2 Claims has carefully monitored the response to the Notice Program and has maintained detailed records reflecting the response. The Declaration of Melissa Baldwin with RG/2 Claims filed herewith, discusses in detail the implementation of this Notice Plan, dissemination of the Class Notice and the response of Settlement Class Members.

The deadline for Settlement Class Members to request to be excluded from the Settlement or to object to the terms of the Settlement was August 17, 2018. [Dkt. 52.] No Settlement Class Members have objected to the Settlement. Baldwin Dec. ¶ 12No.  Settlement Class Members have asked to be excluded from the Settlement. Baldwin Dec. ¶ 11.

The deadline for Settlement Class Members to file Claim Forms was August 13, 2018. [Dkt. 52.] As of August 23, 2018, RG/2 Claims has received 72 timely filed Claim Forms and 3 late-filed Claims. Baldwin Dec. ¶ 13. Of the timely filed Claim Forms, 49 were deficient for missing documentation or for failure to make a benefit election. Baldwin Dec. ¶ 13. RG/2 Claims corresponded with each of the Class Members with deficient claims and provided instructions to cure the deficiencies. Baldwin Dec. ¶ 14. The deadline to cure deficiencies was August 31, 2018. *Id.*   After the deficiency cure period, there are 31 valid requests for extended ID theft protection and 24 valid claims for monetary relief (under categories A, B, C, and D). Despite being advised of the deficiency and being given time to cure, 26 claimants did not make any election of the

category of claim and 7 class members who elected to file a claim under either category A, B, or C but provided no documentation.

Since the close of the claims period, the parties together with the Settlement Administrator have been scrutinizing the claims numbers, claims process, and outstanding deficiencies. While seemingly low, the number of claims falls in line with that seen in most consumer data breach class action cases.[2] Furthermore, it is also important to consider the nature of the restaurant industry when assessing the number of claims. Restaurants have high turnover in their workforce – 72.9%.[3] The average tenure of a restaurant employee is only 1 month 26 days.[4] One reason for the high turnover rate is seasonality. Restaurants hire many seasonal workers—mainly students— during the summer months who return to school in the fall.[5] Additionally, 31% of restaurant workers are part-time employees.[6] Another factor to consider is the demographics of the restaurant workforce. According to the Pew Research Center, roughly 11% of restaurant and bar employees nationwide are undocumented workers.[7] This number is higher for busboys and dishwashers, 17% and 19% respectively.[8] These factors provide valuable insight into the action of Class Member who are or were employees of Defendants' restaurant chain.

---

[2] The claims rate in Anthem data breach which involved Social Security numbers and birthdates was 1.7%. *In re Anthem Data Breach Litigation*, 15-md-2647-LHK, Doc. 1007, p. 4 (April 18, 2018). In comparison to consumer payment card data breaches, the claims rate in the Target data breach was 0.23% and 0.2% in Home Depot. *Id.*

[3] Restaurant Insider, *3 Reasons Restaurant Employees Leave: How to Manage Turnover*, https://upserve.com/restaurant-insider/3-common-reasons-restaurant-employee-turnover/ (last visited September 26, 2018).

[4] Restaurant Scheduling Stats of 2017, https://www.7shifts.com/blog/restaurant-scheduling-stats-of-2017/ (last visited September 25, 2018).

[5] Restaurant Insider, *fn. 3.*

[6] *Id.*

[7] Pew Research Center, 2012 Unauthorized Immigrant Workforce Trends, http://www.pewhispanic.org/2015/03/26/appendix-b-additional-national-tables-and-chart/

[8] *Id.*

After the deficiency cure period, the parties began additional negotiations to make modifications to address concerns regarding the deficiencies in claims, particularly the number of claims filed without the election of any benefits. Defendants have now agreed to pay the claims of 7 class members who elected to file a claim under either category A, B, or C but provided no documentation, even after the deficiency notice. The parties have agreed additionally to provide a second cure period for 26 claimants who did not make any election of the category of claim and 7 claimants who made three or more category selections but did not submit any supporting documentation for any category claim. RG/2 has initiated contact with these 33 claimants and advised them of an additional cure period with a deadline of October 8, 2018.

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

"'Federal courts naturally favor the settlement of class action litigation.'" *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Settlement of class claims brought under Fed. R. Civ. P. 23 may be approved if the Court finds the settlement to be "fair, reasonable, and adequate." *Schneider v. Union Hosp., Inc.*, No. 2:15-cv-00204-JMS-DKL, 2017 U.S. Dist. LEXIS 70462, at *4 (S.D. Ind. May 9, 2017). The Court's inquiry is a "limited" one in that "[j]udges should not substitute their judgment as to optimal settlement terms for the judgment of the litigants and their counsel" and should stop short of the thorough investigation that they would undertake if they were actually trying the case. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314-15 (7th Cir. 1980). Further, in

determining whether a settlement is fair, reasonable, and adequate, the Court should view the settlement as a whole, rather than separately analyzing individual components of the settlement. *Id.* at 315 (citations omitted); *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (citations omitted).

The Seventh Circuit has identified several relevant and interrelated substantive factors that courts should consider in deciding whether to grant final approval of a proposed class action settlement, including:

1. the relative strength of the plaintiffs' case on the merits weighed against the value of the settlement achieved;
2. the complexity, length, and expense of continued litigation;
3. the presence of collusion in achieving the settlement;
4. the stage of the proceedings and amount of discovery completed;
5. the opinion of competent counsel; and
6. the amount of opposition expressed by those affected by the settlement.

*GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); Not every factor will be relevant to every settlement, and a court need not find every factor satisfied in order to approve the settlement; rather, this reasonableness inquiry is highly case-specific and individualized. *See, e.g.*, *Hiram Walker*, 768 F.2d at 890 (describing the court's reasonableness inquiry as "equitable and subjective" in nature). As set forth herein, the weight of the relevant factors strongly favors approval of the parties' Settlement.

### A.  The Settlement Fairly Reflects the Strength of Plaintiff's Case and the Costs and Risks of Further Litigation

The first factor— the benefits achieved by the settlement in light of the strength of the plaintiffs' case and the possible award if judgment were entered for the plaintiffs— is the most important criterion in determining whether a settlement is fair, reasonable, and adequate. *In re*

*Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)); *Isby*, 75 F.3d at 1199; *Armstrong*, 616 F.2d at 314, 322 (citations omitted). That said, a settlement ought not be confused or conflated with a perfect trial win. The Court should "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1198-99. Additionally, the second factor of complexity, length, and expense of further litigation is also to be taken into consideration for analysis. *Armstrong*, 616 F.2d at 322. Together, these factors weigh the benefits of settlement, including the avoidance of further risk and expense, against the range of outcomes for plaintiffs after litigating the suit to completion. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (parties must present evidence to enable the Court to evaluate the settlement in light of the possible outcomes after continued litigation). Both factors support approval of the Settlement in this case, as detailed below.

As numerous courts have noted, "class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Brent*, 2011 U.S. Dist. LEXIS 98763, at *43 (citation and internal quotations omitted). Accordingly, courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See also Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citations omitted).

11

In this action, Class Counsel has achieved a settlement with substantial, ascertainable benefits, at a high degree of financial risk and without any assurance of either compensation for their services or reimbursement for their expenditures. In this instance, solvency of the Defendants was an issue. See, Yanchunis Declaration ¶ 4. Further, the injunctive relief provided for in this Settlement is significant and advances and ensures the rights of the class because it swiftly provides for the security training and protection of personal information that is critical to any company with the personal information that Defendants have for the Settlement Class Members. The extension of the TransUnion product alone is a significant benefit because the retail value of that product can be as much as $19.95 per month and it provides much needed protection for Class Members.

Plaintiffs' success in this matter was not guaranteed, particularly as other courts have addressed the novel legal questions presented in similar W-2 cases and have issued mixed bag of decisions, keeping the law still unsettled. See, e.g., *Castillo v. Seagate Tech., LLC,* 16-cv-01958, 2016 U.S. Dist. Lexis 187428 (N.D. Cal. Sept. 14, 2016) (The court granted defendant's motion to dismiss as to plaintiffs' claims for negligence, California's unfair competition law, and declaratory judgment.); *Giroux v. Essex Prop. Tr.*, 16-Cv-01722, 2017 U.S. Dist. Lexis 66197, at *5 (N.D. Cal. May 1, 2017) (dismissed on the basis of Article III standing); *Savidge v. Pharm-Save, Inc.*, 3:17-Cv-00186, 2017 U.S. Dist. Lexis 197635 (W.D. Ky. Dec. 1, 2017) (The court dismissed plaintiff's invasion of privacy claim finding that their information had not been communicated to the public at large.). Further, class certification has been denied in other consumer data breach cases and it was not until 2017 that the first litigation class was certified in a consumer data breach case, *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017). Even if the class were certified and it was successful in establishing liability at trial, which has not yet occurred in a data breach consumer class action, the jury could award

damages in an amount lower than that sought by the Class or the amount offered in the Settlement. *See In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000) ("[T]he trial process is always fraught with uncertainty.").

Both sides faced the uncertainties, risks, expense and significant delays associated with appeals that would inevitably be pursued following trial. The proposed Settlement avoids these uncertainties and provides the Settlement Class with meaningful, immediate and certain relief.

### B. The Settlement Was Reached As A Result of Arm's-Length Negotiations Between Experienced Counsel

Analysis of the third, fourth, and fifth factors also weighs in favor of final approval. In this case, both sides are represented by seasoned attorneys with vast experience in data breach litigation. Class Counsel thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiffs in this case. The Parties exchanged a substantial amount of information through the Settlement and mediation process. Defendants provided substantive answers to all relevant inquiries to Plaintiffs in the context of settlement negotiations. *See Whitaker v. Navy Fed. Credit Union*, Civ No. RDB 09-cv2288, 2010 WL 3928616, at *3 (D. Md. Oct. 4, 2010) (settlement was fair where parties had briefed motions to dismiss and conducted investigations in the context of settlement negotiations).

Not only do Class Counsel steadfastly agree that the Settlement is beneficial and in the best interest of the Settlement Class, the manner in which it was achieved lends the Settlement additional credence. Specifically, Judge Wayne R. Andersen (Ret.) of Judicial Arbitration and Mediation Services, Inc., a highly experienced, former federal district court judge, served as mediator in the Lawsuit. Judge Andersen's efforts were extraordinary, diligent and fair, ensuring the parties' negotiations were at arms-length and in good faith. These circumstances weigh in

favor of approval. *Isby*, 75 F.3d at 1200; *Great Neck Capital Appreciation Inc. P'ship*, 212 F.R.D. at 410 (W.D. Wis. 2002) (a proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable); *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate).

Even after the parties entered into an agreement with respect to the fundamental settlement terms, hard-fought negotiations continued for six months with respect to the contents of the final Settlement Agreement, frequently involving the involvement of Judge Andersen. Yanchunis Decl. ¶ 3.

Both sides zealously pressed their positions throughout the litigation process, during the course of the mediation, and continued to do so while negotiating the language for their formal written agreement. *See* Yanchunis Decl. ¶ 4. Thus, the Court is entitled to rely heavily on the considered judgment of counsel for the parties that this Settlement represents a fair, reasonable, and adequate resolution of Plaintiffs' claims. *See Armstrong*, 616 F.2d at 325 ("While the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel.") (citations omitted).

### C.  THE RESPONSE OF CLASS MEMBERS SUPPORTS FINAL APPROVAL

Finally, the response of Class Members reflects the adequacy of the Settlement. Not a single Class Member objected to or requested to be excluded from the Settlement. This positive response to the Settlement supports final approval.

Given the positive result achieved in the face of uncertain circumstances, and considering the positive response by Class Members, Plaintiffs now ask this Court to finally approve the

settlement as fair, reasonable, and adequate, and enter a final judgment and order, which, among all else: (1) confirms this Court's preliminary certification of the class; (2) finds that notice of the settlement issued to the class members satisfied Rule 23 and due process, and that notice issued to state and federal officials satisfied 28 U.S.C. § 1715; (3) notes the lack of any request for exclusion from the Settlement;(4) notes the lack of any objection to the Settlement; (5) approves an award of attorneys' fees, litigation costs and expenses; (6) and grants service awards to the Settlement Class Representatives. The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the litigation and provide significant relief to the Settlement Class Members The Settlement provides tiered monetary relief, including two tiers without caps, to compensate Settlement Class Members for inconveniences and losses as a result of the Data Disclosure, as well as injunctive relief, which takes the form of important data security steps and training, some of which has been implemented already by Defendant. The Settlement compares favorably with settlements in similar litigation and was reached only after intensive arm's length negotiations before a skilled mediator. Accordingly, Plaintiffs respectfully submit that the Court should grant final approval of the Settlement and enter a Final Order and Judgment in this matter.

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.     The Settlement Class Still Satisfies the Requirements of Rule 23

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class. [Dkt. 52 at 2.] No circumstances have changed or developed and, as such, Plaintiffs request that the Court affirm its order certifying the class for settlement purposes. Specifically, the Settlement Class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the predominance requirement of Rule 23(b).

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Here, Defendants identified approximately 3,524 former and current employees whose W-2 data was compromised as a result of the Data Disclosure and, thus, are members of the Settlement Class. Baldwin Decl. ¶ 6.

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted).

Here, Plaintiffs have alleged common questions of fact and law including:

- Whether and to what extent Defendants had a duty to protect the PII of Class Members;

- Whether Defendants failed to adequately safeguard the PII of Class Members;

- Whether Defendants timely, adequately, and accurately informed Class Members that their PII had been compromised; and,

- Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Disclosure.

The commonality requirement of Rule 23(a)(2) is readily satisfied as there are many questions of law and fact common to the Settlement Class that focus on Defendants' conduct that lead to the Data Disclosure. Rule 23(a)(2) requires only that there be a single common question of

16

law or fact in order for the court to certify the class action. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (a single issue "central to the validity" of a claim can justify class treatment) (citing *Dukes*, 131 S. Ct. at 2551); *Estate of Vandam v. Daniels*, 278 F.R.D. 415, 423-24 (S.D. Ind. 2011) ("as long as a single issue is common to all class members, not all factual or legal questions raised in the lawsuit need to be common") (citation omitted).

The typicality requirement is met if, "the claims of the representative parties [are] typical of the claims of the class." Fed. R. Civ. P. 23(a)(3); Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citations omitted). Thus, "[a] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *Id*.

Here, Plaintiffs' claims are identical to, and not in conflict with, the claims of Settlement Class members. The claims of the Plaintiffs and Settlement Class Members arise out of the same alleged conduct by Defendants related to the Data Disclosure. Plaintiffs and Settlement Class Members had the same type of data compromised in the Data Disclosure and received the same type of communications from Defendants regarding the Data Disclosure. Because the claims of the representative parties are the same as the claims of the class, the typicality requirement is readily satisfied.

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to

represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997). The factors relevant to a determination of adequate representation are whether the proposed representative plaintiff has the ability and incentive to represent the claims of the class vigorously, has obtained adequate counsel, and has no conflicts with the class. *Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239, 247 (7th Cir. 1975) (stating that a plaintiff can satisfy Rule 23(a)(4) by showing that he does not possess "interests antagonistic to the class.").

Plaintiffs' claims are identical to the Settlement Class. Their goal throughout this litigation has been to achieve the best possible relief on behalf of the Class. Indeed, Plaintiffs' claims coincide identically with the claims of the Settlement Class. Because of this, Plaintiffs have vigorously prosecuted this case for the benefit of all members of the Settlement Class. Moreover, there is no conflict or any antagonism between Plaintiffs and the Settlement Class. Accordingly, Plaintiffs have the ability and incentive to represent the claims of the Settlement Class vigorously.

Furthermore, Plaintiffs have protected the interests of the Settlement Classes by retaining qualified, experienced counsel to represent the Settlement Classes. Plaintiffs' counsel are nationally recognized for their work prosecuting large, complex class actions. With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims, including the interviews of numerous class members who contacted Class Counsel, becoming familiar with the strengths and weaknesses of Plaintiffs' claims, and the prosecution of this action. Class Counsel have a wealth of experience in litigating  complex class action lawsuits, including data breach and other W-2 data disclosure cases, and were able to negotiate a settlement for the Settlement Class that is fair, reasonable, and adequate.  Class Counsel also have consulted with the Settlement Class Representatives regarding the proposed Settlement, and each has agreed to the Settlement.

18

### B.    The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) questions of law and fact common to members of the class predominate over any questions affecting only individuals, and that (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, see *Dukes*, 131 S. Ct. at 2551–57, and whether proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. In determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class") (internal citation omitted). Common issues readily predominate here because each Settlement Class Member had their data compromised as a result of the Data Disclosure and Defendants' conduct was the same as to every Settlement Class Member.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for settlement purposes. *See* Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. Resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same

legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Members of the Settlement Class have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the Settlement Class is appropriate.

## VI.    THE COURT SHOULD APPROVE THE PAYMENT OF ATTORNEYS' FEES, COSTS AND EXPENSES AS AGREED BY THE PARTIES

The parties to a class action properly may negotiate not only the settlement of the action itself but also the payment of attorneys' fees. *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 n.30 (1986). Rule 23(h) of the Federal Rules of Civil Procedure specifically authorizes the Court to award "reasonable attorney's fees and nontaxable costs . . . by the parties' agreement." Fed. R. Civ. P. 23(h).

The Supreme Court has made clear that settlements of requests for attorneys' fees should be encouraged and respected:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The virtue in the negotiation of attorneys' fees by the adversarial parties to the settlement is that the "[m]arkets know market values better than judges do." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). Thus, "the court can, [generally] assume that the defendants closely scrutinized the [plaintiffs'] fee requests, and agreed to pay no more than was reasonable." *In re*

*Fine Paper Antitrust Litig.*, 751 F.2d 562, 582 (3d Cir. 1984). This is particularly true here because the fees were negotiated after agreement was reached on the key terms of the Settlement for the Settlement Class and with the assistance of a well-respected and neutral mediator.

After reaching agreement on benefits to Settlement Class Members, the parties separately negotiated Class Counsel's claims for attorney fees, costs, and reimbursement of litigation expenses, as well as service awards for the Class Representative. Yanchunis Decl. ¶ 8. Defendants do not oppose Court approval of their payment of attorneys' fees and expenses in an amount not to exceed $275,000. These sums are to be paid separately from the relief obtained for the Settlement Class and do not impact the Class benefits in any way. Yanchunis Decl. ¶ 8.

As explained in the attached Declaration of Co-Lead Counsel John Yanchunis, Class Counsel's current lodestar already exceeds $275,000 and Class Counsel will incur additional lodestar and expenses in implementing the settlement and seeing it through final approval. Yanchunis Decl. ¶ 11. Additionally, Class Counsel have incurred nearly $15,000 in litigation expenses, including expenses for filing and court fees, research, travel, postage, printing, and mediation. Yanchunis Decl. ¶ 12. Thus, the award of $275,000 requested is significantly less than the lodestar and expenses expended by Class Counsel to date. Yanchunis Decl. ¶ 12.

Rule 23(h) expressly authorizes the Court to "award reasonable attorney's fees and nontaxable costs ... by the parties' agreement." Fed. R. Civ. P. 23(h). Additionally, attorneys who generate a benefit for the class are entitled to the reimbursement of reasonable litigation expenses. *See Great Neck Capital Appreciation Inv. P'Ship v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) ("The paying arms-length market typically reimburses lawyers for expenses . . . .") (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)).

"An agreed upon award of attorneys' fees and expenses is proper in a class action settlement . . . ." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007). Rule 23(h) expressly authorizes the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "In fact, courts have encouraged litigants to resolve fee issues by agreement if possible." *DeHoyos*, 240 F.R.D. at 322 (collecting cases). Accordingly, courts are authorized to award attorneys' fees and expenses where all parties have agreed to the amount, subject to court approval, particularly where the amount is in addition and separate from the defendant's settlement with the class." *Id.*

In *DeHoyos*, like here, defendant agreed to award class counsel a lump sum of attorneys' fees and expenses, subject to Court approval. The award of attorneys' fees and expenses was separate and apart from the class settlement, and, like here, the attorney fee award would not in any way diminish the class settlement. 240 F.R.D. at 322. And, like here, any reduction in the agreed upon attorneys' fees would not confer a greater benefit upon the class, but rather would only benefit defendant. *Id.* Finally, attorneys' fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement, which is also the case here. *Id.* at 323. The *DeHoyos* court found "[t]hese factors indicate a presumption of reasonableness in the request for an award" and went on to award the requested attorneys' fees, which represented a multiplier of 1.68. *Id.* at 323, 334. Unlike *DeHoyos*, however, Class Counsel is *not* requesting a multiplier in this case. The agreed-upon fee amount actually represents a *negative* multiplier because Class Counsel's lodestar and expenses to date already exceed the amount of fees that Defendants have agreed to pay.

Therefore, Co-Lead Counsel respectfully requests that the Court award $275,000 in attorneys' fees and expenses.

## VII.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS TO THE CLASS REPRESENTATIVES

Plaintiffs also request service awards in the amount of $5,000 each to the Settlement Class Representatives, Robert D. Brady, Jr. and Rachel Megquier, for their diligent efforts on behalf of the Class during the course of this litigation.  Defendants do not oppose this request.

When determining whether to grant a service award, a court considers "[t]he actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Settlement Class Representatives are former employees of Defendants who had their W-2 personal data compromised as a result of the Data Disclosure.   Accordingly, the interests of the Settlement Class Representatives align with those of the Settlement Class. And most importantly, the Settlement Class Representatives have used their best efforts to advance the interest of the members of the Settlement Class.

Throughout this litigation, the Settlement Class Representatives have demonstrated their commitment to monitor and supervise the prosecution of the case on behalf of the Settlement Class. They have provided invaluable assistance to the Class and Class Counsel. They provided crucial documents and information to Class Counsel, reviewed the complaint and other pleadings prior to filing, maintained communication with Class Counsel to monitor the progress of the litigation, and discussed the terms of the settlement with Class Counsel. Yanchunis Declaration ¶ 20. At all times, the Settlement Class Representatives kept the best interests of the Class as their primary consideration, and the Class has benefitted from their participation in this case.

Service awards are especially appropriate in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

The amounts of the proposed Service Awards were thoroughly discussed and negotiated between the parties. The proposed amounts were based on the Settlement Class Representatives' risks in bringing this lawsuit and their level of involvement in the case. Here, the service awards sought are modest and reasonable and fall well within the range of amounts considered "presumptively reasonable" by other courts. *See, e.g., Hawthorne v. Umpqua Bank*, No. 11-6700, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) (finding that a $5,000 incentive award is "presumptively reasonable").

Further, the Settlement Agreement provides that the Service Awards will be paid by Defendant separate and apart from the Claim Fund. Thus, the $5,000 awards sought will not affect the monetary or non-monetary benefits to Settlement Class Members.

## VIII.    CONCLUSION

Based on the foregoing, Co-Lead Counsel respectfully request that the Court enter a Final Order and Judgment Certifying the Class, approving the Class Settlement, awarding $275,000 for attorneys' fees, costs, and expenses, approving Service Awards in the amount of $5,000 each to the Settlement Class Representatives, and dismissing the action with prejudice.

Dated: September 28, 2018              Respectfully submitted,

                                                        *s/ John A. Yanchunis*
                                                        John A. Yanchunis

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
jyanchunis@Forthepeople.com
Marisa Glassman
mglassman@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

**LAW OFFICE OF PAUL C. WHALEN, P.C.**
Paul C. Whalen
paul@paulwhalen.com
768 Plandome Road
Manhasset, New York 11030
Telephone: (516) 426-6870
Facsimile: (212) 658-9685

*Co-Lead Class Counsel*

**LAW OFFICE OF JEAN SUTTON MARTIN PLLC**
Jean Sutton Martin
jean@jsmlawoffice.com
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
Facsimile: (888) 316-3489

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
bmurray@glancylaw.com
230 Park Ave, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988

**JONES WARD PLC**
Jasper D. Ward IV
jasper@jonesward.com
The Pointe
1205 E. Washington Street, Suite 111
Louisville, Kentucky 40206

25

Telephone: (502) 882-6000
Facsimile: (502) 587-2007

***Class Counsel***

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on September 28, 2018, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

s/ John A. Yanchunis
John A. Yanchunis